92 So.2d 42

### JOYCE LEEDS JEWELRY COMPANY, Inc.

v.

### Jesse LAMBETH, d/b/a New Coffee Pot Cafe.

I Div. 708.

Court of Appeals of Alabama.

Oct. 16, 1956.

Rehearing Denied Nov. 13, 1956.

Harry Seale, Mobile, for appellant.

Edmund R. Cannon, Jr., and Jas. T. Strickland, Mobile, for appellee.

BONE, Judge.

On May 24, 1955, Peter L. Susman made an affidavit before H. C. Simmons, justice of the peace, Precinct 27, Mobile County, Alabama, that Joyce Leeds Jewelry Company had obtained a judgment against Helen Mason for $37, plus costs of court, and that Jesse Lambeth, doing business as the New Coffee Pot Cafe, was at that time supposed to be indebted to or have the effects of the said Helen Mason in his possession or under his control. A garnishment action on a judgment was thereby instituted, and Helen Mason was served with notice on May 25, 1955, as was the garnishee. The garnishee filed an answer admitting indebtedness to the defendant, but the answer was made under protest, and the protest charged that the justice of the peace was without authority to entertain jurisdiction by reason of Act No. 12 adopted by the Legislature of Alabama in a 1955 special session, 2d Ex.Sess., which act was approved by the governor on March 23, 1955. Pertinent parts of said act are set out below.

On June 4, 1955, a judgment was rendered by the justice of the peace condemning the moneys in the hands of the

garnishee, and the garnishee effected an appeal to the Circuit Court of Mobile County, Alabama.

On July 5, 1955, the garnishee filed a motion in the circuit court to quash the garnishment proceedings as being contrary to and a violation of Act No. 12. After the filing of the motion the attorneys for the plaintiff and the garnishee entered into a stipulation to the effect that Precinct 27 in Mobile County does not lie within any city or incorporated town of more than fifteen hundred inhabitants in the State of Alabama, and that H. C. Simmons was the duly qualified and acting justice of the peace in and for said precinct.

On September 9, 1955, a judgment was rendered in the circuit court in this case granting the motion to quash the garnishment proceedings and dismissing the garnishee from all liability.

The plaintiff took an appeal to this court from the judgment of the circuit court and has made two assignments of error on the record, one being that the circuit court erred in quashing the garnishment proceedings and the other being that the court erred in dismissing the garnishment proceedings and discharging the garnishee.

It appears from the record that the case was tried in the court below on the question of the validity, vel non, of Act No. 12, Acts of Alabama 1955, Vol. 1, p. 121, and that such validity or invalidity was tested by the court below on the question as to whether a garnishment is a civil case within the meaning of Section 168 of the Constitution of the State of Alabama.

The pertinent parts of the act are as follows:

"Section 1. Justices of the peace and notaries public with powers of justices of the peace in Mobile County now acting or hereafter appointed or elected shall have no jurisdiction, either final or for the purpose of binding over to await the action of the grand jury, in any criminal or quasi-criminal case, nor in any garnishment or attachment proceeding.

"Section 2. All criminal and quasi-criminal cases and all garnishment or attachment proceedings pending in any justice of the peace court or any court of a notary public with powers of a justice of the peace in Mobile County shall be transferred forthwith by the justice or notary to the Inferior Criminal Court of Mobile County, and shall proceed as if begun therein.

"Section 3. All process of attachment, including garnishment and all attempts to institute such process, in courts of justices of the peace in Mobile County shall be absolutely void and of no effect, and any justice of the peace, any notary public with powers of a justice of the peace or the agent or clerk of any justice of the peace or notary ex officio who issues a writ of attachment, including garnishment, in contravention of this act shall be guilty of a misdemeanor, and upon conviction shall be liable to a penalty of one hundred dollars ($100), one-half thereof to the use of the defendant in the attachment or garnishment and the remainder to the use of Mobile County."

The right of the legislature to take away from justices of the peace all criminal jurisdiction is not questioned. This was expressly held in State v. Spurlock, 159 Ala. 122, 48 So. 849. The question was not raised; both attorneys in brief admit the legislative power.

The question before this court is whether Act No. 12 is repugnant to Section 168 of the Alabama Constitution of 1901, art. 6, which states in appropriate part: "Justices of the peace, and the inferior courts in this section provided for, shall have jurisdiction in all civil cases where the amount in controversy does not exceed one hundred dollars, except in cases of libel, slander, assault and battery, and ejectment."

610

The wording of Section 10, Article V, Constitution of Alabama 1819, and of Section 9, Article V, Constitution of Alabama 1861, regarding jurisdiction of justices of the peace is as follows: "Their jurisdiction in civil cases shall be limited to causes in which the amount in controversy shall not exceed fifty dollars."

Jurisdiction of justices of the peace was extended by Section 9, Article VI, of the Constitution of 1865 in these words: "* * * whose jurisdiction in civil cases shall be limited to causes in which the amount in controversy shall not exceed one hundred dollars".

The first case of interest construing the above section was Pearce v. Pope, 42 Ala. 319, decided in 1868 during the January term. The Constitution of 1865 was in force.

Prior to the adoption of the Constitution of 1865, when the jurisdictional amount was $50, the legislature had conferred upon justices of the peace original jurisdiction in the following cases:

"1. Of all actions founded on any contract, where the sum claimed does not exceed fifty dollars.

"2. Of all actions founded on any wrong, or injury, except slander, where the damages claimed do not exceed fifty dollars.

"3. Of all actions of forcible entry, and unlawful detainer.

"4. Of all actions brought to recover specific property, where the value does not exceed fifty dollars.

"5. In such other cases as jurisdiction is, or may be given by law, not contrary to the constitution." Code 1852, § 711.

The Pearce case was an appeal from a judgment rendered in a justice court in the amount of $62.55, on a promissory note made by the defendant. The defendant appealed to the circuit court, where the trial was had de novo. The circuit court sustained a demurrer of defendant on the grounds that the justice of the peace had no jurisdiction.

In affirming the circuit court, the Supreme Court stated:

"The object of the constitutional provisions before referred to, was not to confer power upon the legislature, nor to vest jurisdiction in justices of the peace, nor to provide for its exercise. It was to place a *restriction* upon the legislature in conferring the jurisdiction—to provide a maximum as to its extent. This being effected, it was left to legislative discretion to fix its extent—*under* the maximum, and to provide for its exercise, in the different classes of civil cases.

"Hence, since the adoption of the present constitution, the legislature, in extending the jurisdiction in actions *founded on contract,* did not change its extent in the other classes of civil suits as fixed by the Code; and notwithstanding the language of the present constitution, justices of the peace have not now jurisdiction of civil actions founded on any wrong or injury, nor of actions for the recovery of specific property, where the amount in controversy exceeds fifty dollars; nor could they now exercise jurisdiction in actions founded on contract, where the sum claimed exceeds fifty dollars, but for the act of February 20th, 1866." (The act of February 20, 1866 increased jurisdiction of justice of the peace courts in actions based on contract to the amount of $100. The act was passed after the institution of the suit but before the decision was written.)

The wording of the provision in question was altered in the Constitution of 1868, Sec. 13, Art. VI, to read: "Said justices shall have jurisdiction in all civil cases wherein the amount in controversy does not exceed one hundred dollars."

In Taylor v. Woods, 52 Ala. 474, decided in 1875, it was contended by one of the parties that "the present Constitution, unlike the former constitutions, is an express, direct, immediate, grant of jurisdiction to justices in all civil causes wherein the

amount in controversy does not exceed one hundred dollars, and in this respect varies from the former constitutions; that to clothe them with this jurisdiction legislation is not necessary, and legislation cannot narrow or circumscribe it."

The Supreme Court, in refuting this proposition, stated:

"The Constitution is not the origin or beginning of law in the State. It was made by and for a people among whom the common law prevailed, so far as applicable to their condition, and not superseded or repealed by legislation or constitutional provision,—a people having a well defined, and well understood system of law, written and unwritten, statute and constitutional. It was not intended to abolish or destroy this system, and on its ruins raise up another, new and different. This system continues, except so far as it is repugnant to the Constitution, subject to such limitations and restrictions as it imposes. In the light of the former law and existing system, new constitutional provisions are to be read and interpreted, if their real meaning is ascertained, and the intent of the lawgiver carried into effect."

The court further stated:

"Civil jurisdiction of a justice is not derived from the common law. It originates in, and depends upon constitutional warrant or statutory enactment. The jurisdiction in the present Constitution is 'in all civil causes.' So it was under the former constitutions. The term comprehends every cause which is not criminal. All causes, whether in equity or at law, had but two grand classifications, civil and criminal. The latter comprehends only violations of the criminal law,—causes at the common law, in which the crown, or with us the State, complains of violated law and broken peace, in which all individual right and interest are lost, and merged in the greater right and interest of the sovereign. Civil causes had parties, individual suitors, whose rights and wrongs were the matter of controversy. They embraced every action at law and every suit in equity, whether it sprung from contract or from tort; wheth-

er the form of action for the injury was ex contractu or ex delicto. If this clause of the Constitution is interpreted in the broadest meaning of its words, it would follow that justices had the jurisdiction of a court of equity, when the amount in controversy did not exceed one hundred dollars. They could enforce the specific performance or rescission of contracts, whether relating to land or personal property. The character of the equity involved would not be material. The amount involved would be the test of jurisdiction. So of every action for tort, though sounding in damages merely, of which the law has no standard, but leaves to the discretion of a jury, to be measured by the circumstances of each case,—if the amount claimed does not exceed one hundred dollars. Actions of slander, from jurisdiction of which they have always been excluded, would be embraced by the general words employed in the Constitution. Such a radical change in the legislation of the State, commencing in its territorial existence, is not to be inferred. It must be apparent from the force of the terms of the Constitution. No reason can be assigned for such a change."

The court held: "The true meaning of the Constitution is, that the civil jurisdiction of justices shall be limited to controversies involving an amount not exceeding one hundred dollars; that the general assembly shall determine the class of cases in which it shall be extended to, or reduced below that point."

In construing Article VI, Section 26, Constitution of 1875, the wording of which was, "Such justices shall have jurisdiction in all civil cases wherein the amount in controversy does not exceed $100, except in cases of libel, slander, assault and battery, and ejectment", the Supreme Court in Carter v. Alford, 64 Ala. 236, said: "We do not think this clause of the constitution is self-executing; legislation was necessary to give it effect; and we concur fully in the conclusion reached in Taylor v. Woods, supra."

In deciding a related question the Supreme Court in Alford v. Hicks, 142 Ala.

355, 38 So. 752, 753, reiterated the holdings of the Pearce and Taylor cases, saying: "This being the settled interpretation of the language employed in section 26, quoted above (Constitution of 1875), the incorporation of the same language in section 168 of the present Constitution must be regarded as an adoption of that interpretation. For the framers of the present Constitution must be presumed to have retained it with knowledge of that construction, and the courts will, therefore, feel bound to adhere to that construction."

The settled law being that Section 168 of the present Constitution is not a grant of jurisdiction to justice of the peace courts but a limitation on the legislature as to the jurisdiction it can confer, it follows that it was within the constitutional authority of the legislature to enact Act No. 12, supra.

Such being the holding of this court, it is unnecessary to pass on the question of whether an attachment or garnishment is a "civil suit" within section 168.

Affirmed.