BOWEN, Judge.
Frederick Charles Burt, the appellant, was convicted in circuit court of two charges of assault in the third degree in violation of a municipal ordinance of the City of Montgomery, Alabama. He was given concurrent sentences of six months’ imprisonment in the county jail in each case. In addition, he was fined $100 in each case and was ordered to pay a total of $200 to the victims’ compensation fund. Restitution was ordered to be paid in the amounts of $1,523.95 and $377.95. The appellant raises three issues on this appeal from those convictions.
I.
The appellant argues that he was deprived of his right to due process pursuant to the Fifth Amendment of the United States Constitution because the municipal police failed to preserve evidence which was relevant and material to his defense.
The prosecution’s evidence tended to show that on December 24, 1987, the appellant assaulted Bertha McClain and Tillman Keith Davis. Ms. McClain testified that she did not have any kind of knife or weapon on her when she was assaulted by the appellant outside of her residence. R. 55. She stated that before she was assaulted and while the appellant was assaulting Mr. Davis, the appellant’s brother, Michael, came up on her front porch and “bust my screen door in and said, MF, I’m going to beat your brains out. So I ran in the kitchen and got a knife and I told him to come on.” R. 58. Ms. McClain described this knife as “a little kitchen knife, a little steak knife really” (R. 58), and later denied that the knife was a butcher knife. R. 79. She testified that she never took the knife outside her residence (R. 80), that she did not give the knife to the police and that they did not take it “downtown.” R. 79.
The appellant testified that he was placed in a police car and was taken to the police department.[1] He testified: “While I was sitting up there, they brought the knife up. And when they brought the knife up, he was holding it showing me how large it was and talking about if somebody — .” R. 178-79. The appellant testified that he was not arrested and that he was released.
Montgomery Police Corporal R.G. Lock-ler testified as a defense witness that, although he was not an investigating officer, he went by the scene and talked to the appellant at police headquarters. He did not remember either victim having a knife. R. 87-88. He testified: “To the best of my memory, I don’t remember actually seeing *7 a knife, but for some reason I remember a little bit about a knife. Now, what exactly it was, I don’t remember. It just — And we don’t usually document anything on misdemeanor cases. And that’s what this one was. So I don’t have any documentation to that effect.... Just that there was a knife somewhere. And I don’t remember what that was involving.” R. 87.
The appellant was not charged at the time of the incident but was released. Ms. McClain swore out a complaint on December 29, 1987. Mr. Davis swore out a complaint on January 21, 1988. The record shows that the appellant was arrested on January 4, 1988.
Prior to trial, the appellant filed a motion for discovery which did not specifically request production of any knife. That motion was granted by the trial court. On May 29,1989, the appellant filed an unverified motion to dismiss alleging:
“3. At the time the incident occurred in this case, the Montgomery Police Department confiscated a knife from the alleged victim, Bertha McLain. This knife was last seen by the defendant at the original trial of this case in Montgomery Municipal Court.
“4. Defendant has issued a subpoena duces tecum to the Custodian of the Records of the evidence at the Montgomery Police Department for the knife referred to in paragraph three above. This knife is material evidence for defendant’s claim of self defense.
“5. Montgomery Police Department reports that the knife referred to above cannot be located.”
R. 328.
The appellant was tried on June 29,1989. On June 13, 1989, a hearing was held on the appellant’s motion to dismiss. At this hearing, the appellant maintained that “[t]he police officers on the scene gathered the knife and brought it to the police department and gave it to the detective, and the detective brought it into the interrogation room where they were and that was the last place they saw it.” Second Supplemental Record at 6. The trial court questioned defense counsel about whether the knife was ever in the custody of the police department. Second Supplemental Record at 5-6. The trial court denied the motion to dismiss, apparently on the basis that any loss of the knife would not prejudice the appellant.
In his brief on appeal, the appellant admits that he “cannot say that he has proof that the loss of the knife was a flagrant and deliberate act done in bad faith.” Appellant’s brief at 22. Other than the assertions of defense counsel based on what the appellant had told him and the appellant’s own testimony at trial, there is nothing to indicate that the knife was ever in the possession of the Montgomery Police Department or that it was presented in municipal court. Defense counsel represented to the trial court at the hearing on the motion to dismiss that he had not been able to locate any police officer or detective who had ever had possession of the knife.
In Arizona v. Youngblood, 488 U.S. 51, 58, 109 S.Ct. 333, 337, 102 L.Ed.2d 281 (1988), the United States Supreme Court held “that unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law.” See 2 W. LaFave and J. Israel, Criminal Procedure § 19.5(h) (Supp.1991); Lawson v. State, 557 So.2d 1311 (Ala.Cr.App.1989).
Where the circumstances amount to less than a destruction of evidence which was a flagrant and deliberate act done in bad faith with the intention of prejudicing the defense, “a conviction should not be overturned unless it can be concluded from a review of the record that the defendant’s case was in fact prejudiced by the omission of the nonpreserved evidence.” LaRue v. State, 478 So.2d 13, 16 (Ala.Cr.App.1985), quoting Adams v. State, 367 So.2d 635, 640 (Fla.App.), cert. denied, 376 So.2d 68 (Fla.1979). The crucial exculpatory value of the knife is found not in the production of the knife itself, but in the evidence that the knife was taken from one of the victims at the scene of the crime. At trial, in addition to the appellant, seven defense witnesses testified that the appellant was defending *8 himself when he struck Ms. McClain and that she was armed with a butcher knife. Under these circumstances, we find that the trial court did not abuse its discretion in denying the appellant’s motion to dismiss.
II.
The appellant argues that the trial court improperly refused to allow defense counsel to cross-examine the victim, Ms. McClain, about her reputation for carrying a knife. We disagree because there was no evidence that the appellant was aware of such reputation.
“If the evidence tends to show that the accused acted in self-defense, the accused is entitled to prove that the deceased was in the habit of carrying firearms or other deadly weapons or that he had the reputation of habitually being armed. Such evidence, however, is only admissible if the accused has introduced or offers to introduce other evidence that he knew or had been informed of such habit prior to the alleged offense, as otherwise it could not have influenced his conduct.”
C. Gamble, McElroy’s Alabama Evidence § 63.01(2) (4th ed. 1991) (footnotes omitted). Furthermore, a witness may not prove his or her reputation through the witness’s own testimony. McElroy’s at § 26.02(9).
III.
The municipal court ordered the appellant to pay restitution to both victims. The appellant argues that a municipal court has no authority to impose such an order. We hold that Ala.Code 1975, § 15-18-65 et seq., confers authority upon a municipal court to order restitution in an appropriate cáse.
A municipal court is specifically given the authority to impose restitution when granting probation. § 12-14-13(d)(8). There is no statute which specifically gives a municipal court the authority to otherwise order restitution.
“The power to define crime and fix the punishment for the commission thereof rests with the legislative department of government.” Woco Pep Company of Montgomery v. City of Montgomery, 213 Ala. 452, 454, 105 So. 214, 215 (1925). The matter of criminal jurisdiction is one of statutory creation which “must be clearly conferred, and will not be extended by inference or implication.” Pharr v. Whittle, 237 Ala. 124, 125, 185 So. 895, 896 (1939). See also Ex parte Ellis, 502 So.2d 694 (Ala.1986) (district court without authority to impose additional fine for speeding because of use of radar detection device); Opinion of the Clerk, Supreme Court, 347 So.2d 524, 525 (Ala.1977) (“The sentence imposed must conform to the statute.... The fine cannot exceed the amount prescribed by law.”).
Restitution is authorized by Ala.Code 1975, §§ 15-18-65 through 15-18-77. Those Code sections do not limit the imposition of restitution to any particular court. The stated legislative purpose of restitution is found in § 15-18-65:
“The legislature hereby finds, declares and determines that it is essential to be fair and impartial in the administration of justice, that all perpetrators of criminal activity or conduct be required to fully compensate all victims of such conduct or activity for any pecuniary loss, damage or injury as a direct or indirect result thereof. The provisions of this article shall be construed so as to accomplish this purpose and to promote the same which shall be the public policy of this state.” (Emphasis added.)
See also Rule 26.11(a), A.R.Crim.P., which provides that “[rjestitution should be ordered in all cases where a victim has been injured or damaged.”
“The fundamental rule of statutory construction is to ascertain and give effect to the intent of the legislature in enacting the statute.” Clark v. Houston County Commission, 507 So.2d 902, 903 (Ala.1987).
“In the area of statutory construction, the duty of a court is to ascertain the legislative intent from the language used in the enactment. When the statutory pronouncement is clear and not susceptible to a different interpretation, it is the *9 paramount judicial duty of a court to abide by that clear pronouncement.”
Parker v. Hilliard, 567 So.2d 1343, 1346 (Ala.1990). Here, the intent of the legislature is clear from the language of the statute itself. Therefore, we hold that a municipal court has the authority to impose restitution. See Lewis v. State, 479 So.2d 1356, 1358 (Ala.Cr.App.1985) (“It is apparent, therefore, that any accused person who enters a guilty plea, even to the merest ‘violation,’ not amounting to a misdemeanor, all the way upscale to a capital offense, faces the possibility of the imposition of a fine and of a requirement of restitution or reparation.”); T. Bishop, Alabama Municipal Judges Manual 104 (Municipal Court Operations Division, Administrative Office of Courts, 1986).
The judgment of the circuit court is affirmed.
AFFIRMED.
PATTERSON, P.J., and TAYLOR and McMILLAN, JJ., concur.
MONTIEL, J., recuses himself.

. Although the appellant has not raised this issue on appeal, we note that, without a warrant of arrest issued upon a victim’s complaint, the police had no authority to arrest the appellant for a misdemeanor not committed in their presence. See Ala.Code 1975, § 15-10-3. "Under this section, an officer may not arrest a person for a misdemeanor without a warrant unless the offense has been committed in the arresting officer’s presence." Annotation following § 15-10-3 at p. 281 and cases cited therein.